1  WILLIAM M. CROSBY (SBN: 49357)
   13522 Newport Avenue, Suite 201
2  Tustin, CA 92780
   Telephone: (714) 544-2493
3  Facsimile: (714) 544-2497
   Email: wcrosby@wcrosbylaw.com
4
   Attorney for Plaintiff
5  NATALIE LAMBERT

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11

12                                    )
   NATALIE LAMBERT,                   )  CASE NO. 8:18-cv-01566-JLS (JDEx)
13                                    )
           Plaintiff,                 )  **MEMORANDUM OF POINTS AND AUTHORITIES**
14                                    )  **AND ARGUMENT IN OPPOSITION TO**
   v.                                 )  **DEFENDANTS' MOTION FOR SUMMARY**
15                                    )  **JUDGMENT**
   UNIREGISTRY, INC., a Delaware )
16 corporation; SEVAN DERDERIAN; )    *[Filed and Served Concurrently with Plaintiff's*
   DOES I through X, inclusive, )     *Statement of Genuine Issues in Response to*
17                                    )  *Defendants' Separate Statement of Alleged*
           Defendants.                )  *Uncontroverted Facts and Conclusions of Law;*
18 _____ )  *Declaration of Natalie Lambert in Opposition to*
                                        *Defendants' Motion for Summary Judgment]*
19
                                        Date:  November 15, 2019
20                                      Time:  10:30 a.m.
                                        Ctrm:  10A
21

22      Plaintiff NATALIE LAMBERT ("plaintiff" and "Ms. Lambert") submits

23 the following Memorandum of Points and Authorities and Argument in

24 Opposition to the Motion for Summary Judgment filed by defendants

25 Uniregistry, Inc. ("Uniregistry") and Sevan Derderian ("Derderian")

26 (hereinafter collectively "defendants"):

27 ///

28 ///

TABLE OF CONTENTS

| Description | Page(s) |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii, iii |
| I.   INTRODUCTION | 1 |
| II.   STATEMENT OF FACTS | 2 |
|     Ms. Lambert's Background and Employment by Uniregistry | 2 |
|     Ms. Lambert's Complaints Re Sexual Harassment By DerDerian, and Uniregistry's Retaliatory Acts | 2 |
|     Ms. Lambert's Retaliatory Termination | 3 |
|     Ms. Lambert Timely Contacts the EEOC | 4 |
|     The EEOC Improvidently Issues Its Initial Right-to-Sue Letter | 5 |
|     The EEOC Continues Its Investigation of Plaintiff's Claims | 5 |
|     The EEOC Issues a "Notice of Intent to Reconsider" | 7 |
|     The EEOC's Subsequent Right-To-Sue Letter | 7 |
| III.   ARGUMENT | 8 |
|     A.   APPLICABLE STANDARDS IN RULING ON MOTION FOR SUMMARY JUDGMENT | 8 |
|     B.   GENUINE ISSUES OF FACT EXIST REGARDING WHETHER PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED DUE TO EQUITABLE TOLLING | 9 |
| IV.   CONCLUSION | 20 |

i

TABLE OF AUTHORITIES

<u>Cases</u>                                                    <u>Page(s)</u>

<u>Albemarle Paper Co. v. Moody</u>
    (1975) 422 U.S. 405                                      15

<u>Anderson v. Liberty Lobby, Inc.</u>
    (1986) 477 U.S. 242                                    8, 9

<u>Boone v. Mechanical Specialties Co.</u>
    (9th Cir. 1979) 609 F.2d 956                            15

<u>Celotex Corp. v. Catrett</u>
    (1986) 477 U.S. 317                                      8

<u>Collier v. City of Pasadena</u>
    (1983) 142 Cal.App.3d 917, 922-923                      12

<u>Downs v. Department of Water & Power</u>
    (1997) 58 Cal.App.4th 1097                        11, 12, 14

<u>Eastman Kodak Co. v. Image Technical Services, Inc.</u>
    (1992) 504 U.S. 451                                      9

<u>Gonzalez v. Firestone Tire Rubber Co.</u>
    (5th Cir. 1980) 610 F.2d 241                            10

<u>Lake Nacimiaento Ranch Co. v. San Luis Obispo County</u>
    (9th Cir. 1987) 841 F.2d 872                             9

<u>Lute v. Singer Co.</u>
    (9th Cir. 1982) 678 F.2d 844                    1, 9, 10, 11

<u>Mahon v. Credit Bureau of Placer County Inc.</u>
    (9th Cir. 1999) 171 F.3d 1197                           19

<u>Martin v. Fisher</u>
    (1992) 11 Cal.App.4th 118                               18

<u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>
    (1986) 475 U.S. 574                                      9

<u>Mitchell v. State Department of Public Health</u>
    (2016) 2 Cal.App.5th 303                            13, 14

<u>National Railroad Passenger Corp. v. Morgan</u>
    (2002) 536 U.S. 101, 122                                20

MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TABLE OF AUTHORITIES - (Continued)

Cases                                                          Page(s)

Okoli v. Lockheed Technical Operations Co.
     (1995) 36 Cal.App.4th 1607                                   17

Oubichon v. North American Rockwell Corp.
     (9th Cir. 1973) 482 F.2d 569                                 18

Sanchez v. Standard Brands, Inc.
     (5th Cir. 1970) 431 F.2d 455                                 18

Sischo-Nownejad v Merced Comm. College Dist.
     (9th Cir. 1991) 934 F.2d 1104                                 9

Trujillo v. General Electric Co.
     (10th Cir. 1980) 621 F.2d 1084                               10

Valdez v. City of Los Angeles
     (1991) 231 Cal.App.3d 1043                                   17


Treatise                                                       Page(s)

The Rutter Group California Practice Guide
     Employment Litigation [16:560]                              19

iii

## I.  INTRODUCTION

This is a classic case of an administrative agency failing to fulfill adequately its statutory mandate to protect the consumer (in this case plaintiff Natalie Lambert) who reasonably relied on assurances by the EEOC that despite its previous improvident issuance of a "right-to-sue" letter shortly after filing her initial Charge, that it was continuing the investigate the claims of sexual harassment and retaliation against her previous employer.  When plaintiff received the "Notice of Intent to Reconsider" by the District Director of the Los Angeles District Office of the EEOC, she had every reason to believe that the EEOC was following its own regulations and guidelines, and protecting her interest in securing legal recourse for holding her previous employer accountable and securing compensation for her substantial financial and emotional harm.

Defendants argue in support of this motion that regardless of the EEOC Director's reading of and reliance on applicable regulations warranting the opening of her case, that a Ninth Circuit case holding that the EEOC's failure to reopen the Charge within 90 days of the issuance of its previous right-to-sue letter fatally precludes plaintiff from asserting her civil claims in this action.  Defendants' reliance on <u>Lute v. Singer Co.</u> (9th Cir. 1982) 678 F.2d 844, is misplaced given that it does not deal with the issue of "equitable tolling" at issue here.  Plaintiff's case is distinguishable from <u>Lute</u>, in that the EEOC in <u>Lute</u> had investigated the plaintiff's claims for nearly two years prior to issuing its initial right-to-sue letter, while plaintiff herein had been assured from the time that the first right-to-sue letter had been issued that upon her providing additional evidence the investigation would continue. Because plaintiff relied on

1

1  the assurances of the EEOC from that time forward through the issuance

2  of the "Notice of Intent to Reconsider" on May 25, 2017 and the

3  issuance of the EEOC's subsequent right-to-sue letter on February 6,

4  2018, the time within which she was required by law to file her civil

5  lawsuit should be deemed to have been equitably tolled, such that for

6  purposes of filing her FEHA claims she had an additional one year from

7  the date of the issuance of the subsequent right-to-sue letter.

8  Further, defendants have made an inadequate showing of prejudice to

9  warrant precluding plaintiff from having her day in court based on a

10  laches defense.   For these reasons, defendants Motion for Summary

11  Judgment should be denied.

12  **II.   STATEMENT OF FACTS**

13  **Ms. Lambert's Background and Employment by Uniregistry**:

14  Ms. Lambert has a Bachelors Degree in Marketing and Management

15  from Northwood University in West Palm Beach, Florida.   Prior to her

16  employment with Uniregistry, she was employed as Vice President of

17  City Development for Castello Cities Internet Network for over seven

18  years.   Prior to working at Uniregistry and for approximately 3-1/2

19  years since, she was never terminated from a job for performance or

20  conduct related reasons. Ms. Lambert was employed at Uniregistry from

21  October 28, 2014 to March 23, 2015 as Director of Business

22  Development.   (Lambert Dec., pars. 2, 3)

23  **Ms. Lambert's Complaints Re Sexual Harassment By DerDerian, and**

24  **Uniregistry's Retaliatory Acts**:

25  From the outset of her employment with Uniregistry and

26  continuously thereafter, Ms. Lambert was subject to inappropriate and

27  offensive treatment, which she contends was based on her gender, by

28  her supervisor, Sevan Derderian, Vice President of Sales.   This

2

1    harassment is described in the Complaint herein, as well as in Ms.

2    Lambert's responses to Interrogatories and in her deposition.

3    (Lambert Dec., par. 3)

4        On November 19, 2014, Ms. Lambert made a written complaint to the

5    President of Uniregistry, Frank Schilling, regarding Mr. Derderian's

6    conduct.  Mr. Derderian treated her in an even more hostile manner

7    thereafter.  To her knowledge, no investigation or remedial action was

8    taken regarding her written complaint.  In December of 2014 and

9    January of 2015, Ms. Lambert learned that over 21 fraudulent online

10   credit applications were submitted in her name.  In addition, she also

11   experienced unwarranted changes to her work email password, and her

12   access to Uniregistry's database was restricted.  She told

13   Uniregistry's General Counsel, as well as Francisco Obispo the IT

14   Director, that she believed Mr. Derderian was responsible for the

15   above discriminatory and retaliatory acts.  Further, she was not

16   provided special rates that were provided to the male sales

17   executives.  If she had been provided with these special rates, her

18   sales would have increased.  Due to these and other efforts, which Ms.

19   Lambert believes were made deliberately to sabotage her sales, she was

20   not able to increase her sales to the degree to which she believes

21   would have been possible.  Finally, she had been promised that she

22   would be able to do outside sales, but after she was hired she was

23   told that she had to stay in the office and call customers rather than

24   go out in the field to meet with them.  (Lambert Dec., par. 4)

25   **Ms. Lambert's Retaliatory Termination**:

26       For these reasons, Ms. Lambert was shocked and surprised to

27   receive the email of March 6, 2015 from Bret Fausett, General Counsel,

28   alleging that she had made insufficient sales.  (Lambert Dec., par. 5)

3

MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO
DEFENDANTS' MOTION  FOR SUMMARY JUDGMENT

1    Less than three weeks later, without any further counseling or
2  specific sales goals ever having been provided, Ms. Lambert was told
3  by Michael Ward, Operations Manager, that she was being terminated
4  "because your numbers did not meet expectations." Ms. Lambert did not
5  believe that she had been given close to sufficient time to build
6  relationships or develop business, particularly after having been
7  subject to abusive conduct by her boss and having been sabotaged in
8  the performance of her duties. She had moved from Florida to
9  California, shipped all of her belongings, and signed a one year
10 lease. She was then forced to break her lease and pay to have her
11 belongings shipped back to Florida. Ms. Lambert did not find full
12 time employment again until March of 2017. Due to her resultant
13 depression and anxiety, she received treatment from Alexis Brown,
14 Psy.D. on a weekly basis in 2016 and 2017, and from Jan Ganesh, Psy.D.
15 intermittently during that period. (Lambert Dec., par. 6)

16      **Ms. Lambert Timely Contacts the EEOC**:

17      Following her return to Florida in September of 2015, Ms. Lambert
18 contacted the law firm of Scott Wagner & Associates regarding her
19 possible claims. Based on the information provided by that law firm,
20 she filed a Charge of Discrimination and Retaliation with the Los
21 Angeles office of the EEOC on September 22, 2015. She included
22 Uniregistry's Newport Beach address on her Charge. On September 28,
23 2015, Ms. Lambert received an intake questionnaire from the EEOC
24 stating in part: "We have also notified the employer that you are
25 filing a charge, which we are required to do." Ms. Lambert believes
26 that Mr. Derderian was still employed at the Newport Beach office of
27 Uniregistry at this time. On January 19, 2016, the EEOC filed a
28 Charge of Discrimination and Retaliation. The EEOC's Charge did not

4

1  include as a defendant, Sevan Derderian, even though Ms. Lambert had

2  listed his name three times in her Charge as the person who had abused

3  and sexually harassed her.  On the same date Ms. Lambert's Charge was

4  dual filed with the DFEH, she did not ask either the EEOC or the DFEH

5  to issue an immediate right-to-sue letter.  However she received a

6  "right-to-sue" letter from the DFEH dated January 19, 2016 which

7  stated: "Pursuant to Government Code section 12965, subdivision

8  (d)(1), this one-year period will be tolled during the pendency of the

9  EEOC's investigation of the complaint."  She therefore expected the

10  EEOC to perform an investigation, and was assured of this when she

11  reviewed a letter dated February 1, 2016 from the EEOC that stated:

12  "Pursuant to the worksharing agreement, this charge is to be initially

13  investigated by the EEOC."  (Lambert Dec., par. 7; Exs. A-E)

14       **The EEOC Improvidently Issues Its Initial Right-to-Sue Letter**:

15       Ms. Lambert was then surprised to receive a "right-to-sue" letter

16  from the EEOC dated the same day - February 1, 2016.  She did not

17  understand how they could have conducted a thorough investigation in

18  less than two weeks.  No one from the EEOC had contacted her to

19  interview her further, or advise as to the status of the

20  investigation.  (Lambert Dec., par. 8; Ex. F)

21       **The EEOC Continues Its Investigation of Plaintiff's Claims**:

22       In a telephone conversation on February 24, 2016, Ms. Lambert was

23  told by John Sohn, EEOC Manager, that if she provided evidence they

24  would reevaluate her case and investigate it.  Thereafter she sent a

25  number of documents supporting her claims to Mr. Sohn at the EEOC.  On

26  April 13, 2016, Brandon Mancina, an EEOC Investigator, told Ms.

27  Lambert that "these investigations take a long time" and that she

28  should "continue to follow up regarding the status of the

5

1    investigation," and to let him know if she had additional evidence.

2    (Lambert Dec., par. 9; Ex. G)

3       From May of 2016 through March 10, 2017, Ms. Lambert had periodic

4    conversations with EEOC employees, including Saul Vasquez, who she

5    believes was an Investigator, and Patricia Kane, an EEOC Enforcement

6    Officer.  On March 3, 2017 and March 10, 2017, Ms. Kane assured Ms.

7    Lambert that her right-to-sue letter was being re-evaluated and

8    investigated and to let her know if she had additional evidence.  Ms.

9    Kane also told Ms. Lambert that she had a good legal argument.

10   (Lambert Dec., par. 10)

11      Ms. Lambert's belief that she had additional time to file a civil

12   lawsuit was also based on advice by her counsel at Scott Wagner &

13   Associates, that given these assurances by the EEOC she would in fact

14   have additional time.  (Lambert Dec., par. 11)

15      Ms. Lambert was unaware of whether or not the Charges and right-

16   to-sue letters previously issued by the EEOC and the DFEH had in fact

17   been sent to Uniregistry or Mr. Derderian.  On March 23, 2017, her

18   counsel at Scott Wagner & Associates sent a letter to Uniregistry

19   outlining her claims.  This was sent in the belief that since the EEOC

20   had assured Ms. Lambert that it would need additional time to complete

21   its investigation and issue a subsequent right-to-sue letter that

22   there was ample time left in which to file a civil lawsuit.  (Lambert

23   Dec., par. 12)

24      On March 23, 2017, Ms. Lambert's attorney Lindsey Wagner sent a

25   letter to Patricia Kane, the EEOC Enforcement Officer, advising that

26   Scott Wagner & Associates would be representing her in further

27   communications with the EEOC.  On March 31, 2017 Ms. Wagner sent a

28   further letter to Ms. Kane with additional documents supporting Ms.

6

1   Lambert's claims.   (Lambert Dec., par. 13; Exs. H, I)

2   **The EEOC Issues a "Notice of Intent to Reconsider":**

3      Ms. Lambert received a letter dated May 25, 2017 from Rosa M.

4   Viramontes, District Director of the Los Angeles District Office of

5   the EEOC, advising of the "Notice of Intent to Reconsider" pursuant to

6   29 CFR 1601.21.   Ms. Lambert was surprised to learn that there had

7   been a Dismissal of the Right-To-Sue on February 1, 2016.   Not only

8   had she not been advised of this, but as stated above, Ms. Lambert had

9   been reassured repeatedly that the investigation was ongoing based on

10  her original Charge.   (Lambert Dec., par. 14; Ex. J)

11     A series of emails dated from July 18, 2017 through January 23,

12  2018 between Jacqueline Escobar, EEOC Investigator, and Lorraine

13  Ocheltree, Uniregistry's counsel, reflect a very substantial delay in

14  Uniregistry's response to the EEOC's request for information.   After

15  attempting to arrange interviews with three witnesses on July 18,

16  2017, it was not until January 23, 2018 that a single affidavit

17  apparently was obtained by Vern Jurovich, which he apparently declined

18  to sign.   These emails, which Ms. Lambert obtained through the FOIA,

19  appear to reflect a lack of cooperation by Uniregistry and a

20  questionable basis for the EEOC closing its investigation (with only

21  one unsigned affidavit).   (Lambert Dec., par. 15; Ex. K)

22  **The EEOC's Subsequent Right-To-Sue Letter:**

23     On February 6, 2018, the EEOC issued its subsequent right-to-sue

24  letter.   Because Ms. Lambert was living in Boynton Beach, Florida and

25  needed to find an attorney who would file a civil lawsuit for her in

26  Southern California, it took her some time to locate such an attorney.

27  She contacted William M. Crosby in July of 2018 and filed her civil

28  lawsuit alleging claims under the Fair Employment and Housing Act for

7

1  Sexual Harassment (Gov. Code, § 12940(j)) and Retaliation (Gov. Code,

2  § (h)) on July 24, 2018.  After prompt service of the Complaint on

3  defendants Uniregistry, Inc. and Derderian, the action was removed to

4  the United States District Court, Central District of California,

5  based on diversity of citizenship on September 4, 2018.  (Lambert

6  Dec., par. 16; Ex. L)

7      Ms. Lambert at all times believed that she had filed her Charge

8  with the EEOC as required by law, and that the EEOC had complied with

9  its obligations to conduct an investigation pursuant to its statutory

10  authority.  The repeated assurances to Ms. Lambert by the EEOC's

11  agents as indicated above reinforced her belief in that regard.  At no

12  time has she willfully attempted to delay any investigation or the

13  filing of this action, and her counsel has complied with all

14  applicable deadlines required by the District Court in the prosecution

15  of Ms. Lambert's civil lawsuit.  Ms. Lambert very much wants to have

16  her day in court as a result of the great financial and emotional harm

17  caused her by defendants, and she wants the defendants to be held

18  accountable for their wrongful conduct.  (Lambert Dec., par. 17)

19                          **III.  ARGUMENT**

20  **A.  APPLICABLE STANDARDS IN RULING ON MOTION FOR SUMMARY
21      JUDGMENT.**

22      Rule 56 is to be construed "with due regard for the rights of

23  persons asserting claims and defenses that are adequately based in

24  fact to have those claims and defenses tried to a jury."  <u>Celotex</u>

25  <u>Corp. v. Catrett</u> (1986) 477 U.S. 317, 106 S.Ct. 2548.  Summary

26  judgment is a drastic remedy and it is to be granted cautiously:

27  "Neither do we suggest that the trial court should act other than with

28  caution in granting summary judgment."  <u>Anderson v. Liberty Lobby,</u>

MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    Inc. (1986) 477 U.S. 242, 106 S.Ct. 2505.  "All reasonable inferences
2    must be drawn in the opposing party's favor . . . .  At the summary
3    judgment stage, the non movant's version of any disputed issue of fact
4    is presumed correct." Eastman Kodak Co. v. Image Technical Services,
5    Inc. (1992) 504 U.S. 451, 112 S.Ct. 2072.  "Even where the basic facts
6    are undisputed, if reasonable minds could differ on the inferences to
7    be drawn from those facts, summary judgment should be denied." Lake
8    Nacimiaento Ranch Co. v. San Luis Obispo County (9th Cir. 1987) 841
9    F.2d 872.  Further, where an employer's state of mind or motivation is
10   in issue, a genuine issue exists precluding summary judgment. Sischo-
11   Nownejad v Merced Comm. College Dist. (9th Cir. 1991) 934 F.2d 1104.

12        The Court should draw all reasonable inferences in favor of the
13   non moving party, without making credibility determinations or
14   weighing any evidence.  Matsushita Elec. Industrial Co. v. Zenith
15   Radio Corp. (1986) 475 U.S. 574; Anderson v. Liberty Lobby, Inc.
16   (1986) 477 U.S. 242.

17        **B.   GENUINE ISSUES OF FACT EXIST REGARDING WHETHER PLAINTIFF'S
          CLAIMS ARE NOT TIME-BARRED DUE TO EQUITABLE TOLLING.**
18
19        Citing inapposite authorities, defendants argue that because the
20   "Notice of Intent to Reconsider" did not take place within 90 days of
21   the issuance of the initial "right-to-sue" letter issued by the EEOC,
22   or even within one year - the time period in which a civil action
23   under FEHA can be filed under the "work sharing" agreement - that the
24   EEOC's second right-to-sue letter issued on February 6, 2018 was
25   issued too late, thereby depriving this court of jurisdiction for
26   plaintiff's otherwise timely filed FEHA claims.  Citing Lute v. Singer
27   Co. (Ibid) and two cases in the 5th and 10th Circuits Courts of Appeal
28   citing Lute, defendants claim that the EEOC exceeded its authority by

9

1   issuing a second right-to-sue notice more than 90 days following the

2   issuance of the initial right-to-sue notice on February 1, 2016.

3   (Defendants' Brief, p. 17:11-15)

4       In <u>Lute v. Singer Co.</u> (Ibid), the EEOC had issued its initial

5   right-to-sue letter on May 5, 1978, one year and five months after

6   opening its investigation in October of 1976.  The second right-to-sue

7   letter issued on January 21, 1980, over 19 months after the issuance

8   of the initial right-to-sue letter.  The <u>Lute</u> court in reversing the

9   trial court's allowing the second right-to-sue letter while noting the

10  authority of the EEOC to reconsider a case and change its original

11  decision stated, ". . . by limiting the time in which the EEOC may

12  rescind a Notice of Right to Sue to the 90-day period in which suit

13  may be brought, <u>Trujillo</u> and <u>Gonzalez</u> protect both defendant's and

14  plaintiff's interest in speedy resolution of Title VII complaints

15  without unduly restricting the EEOC's ability to address its own

16  errors."  Id. at p. 846.  The cases cited, <u>Trujillo v. General</u>

17  <u>Electric Co.</u> (10th Cir. 1980) 621 F.2d 1084 and <u>Gonzalez v. Firestone</u>

18  <u>Tire Rubber Co.</u> (5th Cir. 1980) 610 F.2d 241, involved cases in which

19  a full investigation was conducted by the EEOC.  In <u>Trujillo</u>, the

20  plaintiff filed his initial Charge of Discrimination on June 2, 1976.

21  The right-to-sue letter issued six months later on December 2, 1976.

22  The Court held that the District Director's decision to reconsider his

23  earlier determination of no-cause on January 24, 1977 was within the

24  90 days within which he would otherwise have been able to bring a

25  claim under the original EEOC right-to-sue letter.

26      Similarly in <u>Gonzalez</u>, the plaintiff filed a Charge of

27  Discrimination in September of 1973.  A no-cause determination was

28  issued on March 20, 1974, approximately seven months later.  Forty one

10

1    days later, the EEOC issued a Notice of Reconsideration.  In both

2    causes, as in <u>Lute</u>, a presumably adequate investigation had been

3    conducted by the EEOC over a period of many months, prior to the

4    issuance of the initial right-to-sue letter.  In none of these three

5    cases was the doctrine of "equitable tolling" applied.[1]  That doctrine,

6    requiring that strict limitation periods be tolled for equitable

7    reasons, was described in <u>Downs v. Department of Water & Power</u> (1997)

8    58 Cal.App.4th 1097.  In <u>Downs</u>, the plaintiff had filed a Charge of

9    racial discrimination and harassment with the EEOC on March 15, 1993.

10   A copy was sent to the DFEH under their work sharing agreement.  The

11   EEOC advised the plaintiff that the DFEH would not be issuing an

12   accusation and that he had one year to file an action under the Fair

13   Employment and Housing Act pursuant to Government Code, § 12965(b).

14   A right-to-sue letter issued to the plaintiff on September 29, 1995.

15   Three months later the plaintiff filed a complaint for violations of

16   FEHA.  The trial court dismissed the action for failing to file within

17   the one year period.  The appellate court reversed, citing the

18   equitable tolling doctrine.  In discussing this doctrine, the Court

19   stated that it "evolved in the 1970's to toll statutes of limitations

20   when defendants would not be prejudiced and plaintiffs, who had

21   several legal remedies, pursued one such remedy reasonably and in good

22   faith."

23   ///

24   ///

25   ///

26   _____

27        [1]Plaintiff does not raise the "continuing violation" doctrine as a basis for asserting the timeliness of
     her civil action.  Defendants are mistaken in their assertion that plaintiff relies on this theory as stated at p.
28   22:3-5 of their brief.  Rather, plaintiff relies on the "equitable tolling" doctrine as discussed herein.

MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   In <u>Collier v. City of Pasadena</u> (1983) 142 Cal.App.3d 917, 922-
2   923, the Court noted:

> "Three factors determine whether the statute of limitation
> is equitably tolled in a particular case: (1) timely notice
> to defendants in filing the first claim; (2) lack of
> prejudice to defendants in gathering evidence to defend
> against the second claim; and (3) good faith and reasonable
> conduct by plaintiffs in fling the second claim." Id. at p.
> 1101.

7   The <u>Downs</u> court further noted that the doctrine "serves the
8   fundamental purpose of the statutes of limitations by providing timely
9   notice of claims to defendants, without imposing the costs of
10  forfeiture on plaintiffs. (Citations) Second, it avoids the hardship
11  of compelling the plaintiffs to pursue several duplicative actions
12  simultaneously on the same set of facts. (Citation) Third, it
13  lessens the costs incurred by courts and other dispute resolution
14  tribunals because disposition of a case filed in one forum may render
15  proceedings in the second unnecessary or easier and less expensive to
16  resolve." (Id. at p. 1101)

17  Plaintiff had requested that the EEOC do a full investigation
18  into her claims when she made her initial Charge on September 22,
19  2015. The issuance of the EEOC's first right-to-sue letter on
20  February 1, 2016 was without any adequate investigation. When
21  plaintiff questioned why the right-to-sue letter had issued, she was
22  told that if she provided evidence the EEOC would reevaluate her case
23  and investigate it. Plaintiff then sent a number of documents
24  supporting her claims to the EEOC. (Lambert Dec., pars. 8, 9; Ex. G)
25  She was reassured on multiple occasions by communications with the
26  EEOC's Investigators and agents that the investigation would continue
27  through the spring and summer of 2017, and that her right-to-sue
28  letter was being re-evaluated. (Lambert Dec., pars. 9 and 10) This

MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    was also confirmed through communications by her employment lawyer

2    that she retained to communicate on her behalf with the EEOC.

3    (Lambert Dec., pars. 11 and 13; Exs. H, I)

4         On May 25, 2017, the District Director of the Los Angeles

5    District Office of the EEOC issued a "Notice of Intent to Reconsider"

6    pursuant to 29 CFR 1601.21.   (Lambert Dec., par. 14; Ex. J)   This

7    states in part:

8         "In no circumstances where the notice of right to sue has
         been revoked, the issuing Director will, in accordance with
9         § 1601.28, issue a notice of right to sue anew which will
         provide the charging party with 90 days within which to
10        bring suit."

11        Defendants, by their counsel, in communications with the EEOC

12   from July 18, 2017 through January 23, 2018 caused further delay in

13   the proceedings, and produced only one (unsigned) affidavit by a

14   Uniregistry employee. (Lambert Dec., par. 15; Ex. K) When efforts at

15   conciliation failed, the EEOC issued a subsequent right-to-sue letter

16   to plaintiff on February 6, 2018. (Lambert Dec., par. 16; Ex. L) The

17   present civil lawsuit was timely filed following the issuance of this

18   right-to-sue letter on July 24, 2018.

19        The present civil lawsuit is more akin to Mitchell v. State

20   Department of Public Health (2016) 2 Cal.App.5th 303.   In Mitchell,

21   the Court held that the plaintiff's complaint was timely filed even

22   though it was filed nearly three years after the DFEH issued its

23   initial "right-to-sue" letter.  This had been issued at the same time

24   the plaintiff filed a discrimination charge with the EEOC.  More than

25   two years after the DFEH issued its "right-to-sue" letter, the EEOC

26   issued a letter of determination stating there was "reasonable cause"

27   to believe Mitchell had suffered discrimination.  A "right-to-sue"

28   notice was then issued by the EEOC on March 21, 2014 and suit was

                                    13

1    filed on July 8, 2014, three years after the initial right-to-sue
2    letter issued. Citing Government Code, § 12965(d) as being "intended
3    to codify the holding in Downs (supra) . . . ." Id. at p. 312. The
4    Court also noted: "The complaint alleges sufficient facts to plead the
5    third requirement of equitable tolling - reasonable and good faith
6    conduct by the plaintiff. In this regard the 'FEHA itself requires
7    that we interpret its terms liberally in order to accomplish the
8    stated legislative purpose (Gov. Code, § 12993(a) . . . .) In order
9    to carry out the purpose of FEHA to safeguard the employee's right to
10   hold employment without experiencing discrimination, the limitations
11   period set out in the FEHA should be interpreted so as to promote the
12   resolution of potentially meritorious claims on the merits.'"

13      Similarly here, plaintiff received notice soon after she received
14   her initial right-to-sue letter from the DFEH that the one year period
15   for filing a FEHA claim would be tolled during the pendency of the
16   EEOC's investigation. Just as the Court found in Mitchell v. State
17   Department of Public Health (Ibid) that the statute of limitations was
18   equitably tolled until the EEOC issued its letter of determination
19   nearly three years after the DFEH issued its first right-to-sue
20   letter, so under the facts of this case, equitable tolling similarly
21   applies. Plaintiff had been expressly told and reassured on multiple
22   occasions by the EEOC's Investigators and agents that her
23   investigation was ongoing after the issuance of the EEOC's first
24   right-to-sue letter on February 1, 2016.

25      Defendants will likely argue that the first and second elements
26   are insufficient to justify this doctrine. Defendants claim that they
27   did not receive notice of the Charges until they received the letter
28   from plaintiff's counsel in March of 2017. Yet it strains credulity

14

1  that defendants would not have received notice when plaintiff provided

2  Uniregistry's Newport Beach address to the EEOC when she filed her

3  initial Charge, and the EEOC had advised plaintiff in its September

4  28, 2015 intake questionnaire that they had "notified the employer

5  that you are filing a charge, which we are required to do." (Lambert

6  Dec., par. 7; Exs. A, B)  Any blame attributable to the delay in

7  notice to defendants of plaintiff's claims cannot be attributable to

8  plaintiff, as she had provided the EEOC with Uniregistry's business

9  address when she timely filed her initial Charge on September 22,

10 2015.

11     The cases cited by defendants in support of their argument based

12 on laches are inapposite.  In Boone v. Mechanical Specialties Co. (9th

13 Cir. 1979) 609 F.2d 956, the plaintiff's case was pending before the

14 EEOC for almost seven years before requesting and receiving a right-

15 to-sue letter, and then the plaintiff waited an additional four and a

16 half months before filing a civil action.  The plaintiff had rejected

17 numerous offers by the EEOC to issue right-to-sue letters.  Only 16 of

18 the 51 employees that the plaintiff named as possible witnesses were

19 still employed by the company.  The Court's dismissal was based on its

20 findings that the plaintiff's delay was unreasonable and inexcusable.

21     In Albemarle Paper Co. v. Moody (1975) 422 U.S. 405, a class

22 action seeking injunctive relief against discriminatory plant policies

23 and practices, the Supreme Court properly affirmed a dismissal of a

24 motion to add a claim for back pay filed five years after the filing

25 of the complaint.  The Supreme Court held that whether the

26 respondents' tardiness and inconsistency in making their back pay

27 demands were excusable and actually prejudiced petitioners were

28 matters that would be open to review by the Court of Appeals in the

15

1   event the District Court, on remand, decided to decline a back pay
2   award.  Id. at pp. 423-425.  In the present case, on the other hand,
3   plaintiff and her counsel had been led to believe by the EEOC that
4   despite the hastily issued right-to-sue letter soon after the filing
5   of plaintiff's initial Charge, that based on additional evidence
6   provided by plaintiff that the EEOC was continuing to investigate her
7   charges.  (Lambert Dec., pars. 9, 10; Ex. G)  Also, a very substantial
8   delay of the investigation, from July 18, 2017 through January 23,
9   2018, can be attributed primarily to defense counsel's delays in
10  responding to the EEOC's requests for information, and the attempts by
11  defense counsel to take extensions of time to respond to the EEOC's
12  inquiries.  (Lambert Dec., par. 15, Ex. K; Ocheltree Dec., pars. 3-9,
13  Exs. B-E)  Further, because plaintiff was living in Boynton Beach,
14  Florida at the time the subsequent right-to-sue letter was issued by
15  the EEOC on February 6, 2018, she needed to find an attorney who would
16  file a civil lawsuit for her in Southern California.  It took her some
17  time to locate such an attorney.  Plaintiff found her current
18  attorney, William M. Crosby, in July of 2018 and filed her civil
19  lawsuit on July 24, 2018.

20      Regarding the alleged prejudice to defendants due to the absence
21  of key witnesses, there are only two witnesses referenced in
22  defendants' brief who allegedly are not available, Manu Lanctot and
23  Michael Ward.  Mr. Lanctot, who is now deceased, was an employee in
24  the IT Department and would have been able to corroborate plaintiff's
25  complaints regarding the unwarranted changes to her work email
26  password.  Regarding Mr. Ward, the Director of Operations, according
27  to plaintiff he saw Mr. Derderian treat her abusively and was aware of
28  her complaints regarding the unwarranted changes to her work email

16

1   password, as well as her access to the company database being

2   restricted. Also, Mr. Ward was the one who terminated plaintiff. In

3   both cases, it is plaintiff who will arguably be most prejudiced by

4   their absence, as they would have presumably corroborated her

5   complaints. Further, plaintiff's attorney will be unable to cross-

6   examine Mr. Ward regarding the reasons for her termination. (Lambert

7   Dec., par. 18)

8        Defendants next argue that because defendant Derderian was not

9   named as a respondent in the EEOC or DFEH Charges, the "right-to-sue"

10  letters cannot apply to defendant Derderian. Defendants cite to

11  authority that a party not named in an administrative charge issued by

12  the EEOC or DFEH may not be named in a civil action asserting a FEHA

13  claim, citing Okoli v. Lockheed Technical Operations Co. (1995) 36

14  Cal.App.4th 1607 and Valdez v. City of Los Angeles (1991) 231

15  Cal.App.3d 1043 in support of this proposition. In Okoli, the issue

16  raised on appeal pertained to the failure of the appellant to allege

17  a claim of retaliation which had occurred after the filing of a DFEH

18  charge. The Court held that since the EEOC could not have had the

19  opportunity to investigate and conciliate events occurring subsequent

20  to the initial filing, that his retaliation claim could not be deemed

21  sufficiently reasonably related to the DFEH claim he filed to allow it

22  to be pursued. In Valdez, the Court noted that the individual

23  defendants had not been named in the Charge of Discrimination filed

24  through the DFEH, and that individuals are not liable in a claim of

25  discrimination. In the present case, on the other hand, in her

26  initial Charge to the EEOC plaintiff alleged that defendant Derderian

27  had sexually harassed her. In her September 22, 2015 Charge to the

28  EEOC plaintiff stated: "During my employment . . . I was . . .

17

MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    harassed . . . on a daily basis by Sevan Derderian and several other

2    employees in the office which were all male . . . .   The harassment

3    continued and escalated . . . ."   (Lambert Dec., Ex. A)

4        In <u>Martin v. Fisher</u> (1992) 11 Cal.App.4th 118, the Court held

5    that it was not necessary for a plaintiff to name a defendant in the

6    caption of a DFEH administrative charge, stating: "We conclude that

7    since respondent was named in the body of the administrative charge

8    and participated in the administrative investigation, the trial court

9    erred in dismissing appellant's claims against him for failure to

10   exhaust administrative remedies."   Id. at p. 123.

11       In the present case, although defendant Derderian is not

12   identified as a named party in the caption of the EEOC or DFEH charge,

13   the body of both charges are replete with reference to defendant

14   Derderian.   In the September 22, 2015 Charge, for example, it states

15   that "since hired I have been constantly harassed by Sevan Derderian

16   ('Sevan') in that he often prevented me from doing my job, and I was

17   told by Sevan that I should put a pic of me in my email because I was

18   hot and that it would help me get business . . . .   Subsequently Sevan

19   found out and threatened me by telling me he was going to make my job

20   very difficult . . . ."   (Lambert Dec., Ex. A)   This was the operative

21   Charge to which the "right-to-sue" letter was issued by the EEOC on

22   February 6, 2018.   (Lambert Dec., Ex. L)

23       In <u>Oubichon v. North American Rockwell Corp.</u> (9th Cir. 1973) 482

24   F.2d 569, the Ninth Circuit held that "(w)hen an employee seeks

25   judicial relief for incidents not listed in his original charge to the

26   (EEOC)  the  judicial  complaint  nevertheless  may  encompass  any

27   discrimination like or reasonably related to the allegations of the

28   EEOC charge . . . ."   Id. at p. 571.   See also <u>Sanchez v. Standard</u>

                                    18

MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO
DEFENDANTS' MOTION  FOR SUMMARY JUDGMENT

1  Brands, Inc. (5th Cir. 1970) 431 F.2d 455, in which the Court held

2  that the scope of a civil complaint is limited not by the EEOC charge,

3  but rather by "the scope of the EEOC investigation which can

4  reasonably be expected to grow out of the charge of discrimination."

5  Id. at p. 466.

6      Defendants rely on the dubious assertion that they were not on

7  notice of any of plaintiff's claims until receipt of plaintiff's

8  attorney's letter of March 23, 2017, and that defendant Derderian

9  himself did not learn of any possible claims until he was served with

10  this civil lawsuit. These assertions by defendants are highly

11  questionable. In plaintiff's initial Charge of Discrimination and

12  Retaliation that she filed with the EEOC on September 22, 2015, she

13  listed Uniregistry's Newport Beach, California address. (Lambert

14  Dec., par. 7, Ex. A) On September 28, 2015, plaintiff received an

15  intake questionnaire from the EEOC stating in part: "We have also

16  notified the employer that you are filing a charge, which we are

17  required to do." (Lambert Dec., par. 7, Ex. B) Plaintiff was aware

18  that defendant Derderian was still employed at the Newport Beach

19  office of Uniregistry at this time. The EEOC's January 19, 2016

20  Charge of Discrimination and Retaliation also listed Uniregistry's

21  Newport Beach, California address. (Lambert Dec., par. 7, Ex. C) The

22  Ninth Circuit recognizes the "Mailbox Rule," whereby "proper and

23  timely mailing of a document raises a rebuttable presumption that it

24  is received by the addressee." Mahon v. Credit Bureau of Placer

25  County Inc. (9th Cir. 1999) 171 F.3d 1197.

26      Finally, laches is an equitable defense, which has been held to

27  apply only to injunctive or other equitable claims. The Rutter Group

28  California Practice Guide, *Employment Litigation* [16:560]. And

19

1   assuming _arguendo_ that the defense applies, for the foregoing reasons

2   defendants will be unable to prove lack of diligence by plaintiff in

3   pursuing her claims - a necessary element of the defense.  National

4   Railroad Passenger Corp. v. Morgan (2002) 536 U.S. 101, 122.

5                          **IV.   CONCLUSION**

6        As demonstrated above, this is not a case in which the lengthy

7   delay of filing this civil action was attributable to plaintiff's lack

8   of diligence in pursuing her claims.  Rather, she relied in good faith

9   on representations and assurances by the EEOC representatives, and

10  even the District Director of the Los Angeles District Office of the

11  EEOC, regarding its pursuit of an ongoing investigation and the

12  timeliness of the issuance of the subsequent February 6, 2018 "right-

13  to-sue" letter.  Moreover, defendants have made an inadequate showing

14  of prejudice, even assuming a laches defense was otherwise applicable.

15  Insufficient grounds have been established to warrant the denial of

16  plaintiff's right to a jury trial as to her claims.

17

18  Dated:   October 24, 2019

19                                    WILLIAM M. CROSBY
                                      Attorney for Plaintiff
20                                    NATALIE LAMBERT

21

22

23

24

25

26

27

28

                                  20

MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO
DEFENDANTS' MOTION  FOR SUMMARY JUDGMENT